## IN RE PATERSON REDEVELOPMENT AGENCY.

Superior Court of New Jersey
Appellate Division

Argued April 5, 1976—Decided May 4, 1976.

Before Judges CARTON, CRAHAY and HANDLER.

*Mr. Michael K. Diamond* argued the cause for appellant Paterson Redevelopment Agency (*Messrs. Diamond, Diamond & Afflitto,* attorneys; *Mr. Terry L. Shapiro* on the brief).

*Ms. Prudence H. Bisbee,* Deputy Attorney General, argued the cause for respondent Board of Trustees, Public Employees' Retirement System, Division of Pensions, Department of the Treasury (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* First Assistant Attorney General, of counsel).

The opinion of the court was delivered by

CARTON, P. J. A. D. This case involves an appeal from a determination of the Board of Trustees of the Public Employees' Retirement System (PERS) directing the Paterson Redevelopment Agency to enroll its employees in PERS.

The Agency was established on February 13, 1969 by the Board of Finance of the City of Paterson by ordinance, pursuant to *N. J. S. A.* 40:55C-1 *et seq.* The ordinance noted that the Agency was created expressly to assume the powers and continue the urban renewal functions of the Housing Authority of the City of Paterson.

Following the Agency's creation, the Paterson Housing Authority transferred to the Redevelopment Agency the Authority's project contracts, federal redevelopment projects, and 13 of its redevelopment employees.

On July 30, 1974 the City of Paterson, by ordinance, dissolved the Redevelopment Agency. Specifically, the city rescinded the ordinance which had created the Agency, assumed the Agency's obligations and placed redevelopment responsibilities in the city's Department of Community Development. See *N. J. S. A.* 40:55C-1.

On June 26, 1969 the Redevelopment Agency, by resolution, directed its administrator to enter into a federally-approved retirement plan with the Mutual Life Insurance Company of New York; the effective date of the plan was

established as June 26, 1969. By terms of the private plan, all persons employed after June 26, 1969 were required to join the plan;[1] those employed before that date had the option of joining. Employees were enrolled only on June 26 of each year, and only employees with at least one year of service were eligible. Thus, depending on the date of initial employment, an employee might not be eligible for almost two years after starting work. The employer and employee each contributed 5% of salary for coverage.

Of the 13 initial Agency employees, eight elected to continue in PERS and five elected to be covered by the private plan. All of these five qualified on the basis of more than a year's service for the Housing Authority of the City of Paterson. By the time of the hearing in July 1974 there were 33 regular full-time employees of the Agency: 14 were covered by the private plan; 10 had less than one calendar year's service; 4 were overage and 3 or 5 of the remaining initial PERS members continued in PERS. No employees other than the original eight had enrolled in PERS.

At the administrative hearing it was explained that the Agency's function was performed through numerous specific federal project contracts; under such contracts the Federal Government approved a specific project, the timetable for completion of the project, and provided two-thirds to three-fourths of the project's funding. The remaining cost was provided locally. The Agency was also authorized to conduct projects without federal participation.

Resolution of the narrow issue posed on this appeal turns on the applicability of *N. J. S. A.* 43:15A–65(b), which makes PERS enrollment mandatory for municipal and county employees, but exempts from it those "eligible to become a member of any other retirement system * * *." More specifically, the question is whether the Redevelopment

---

[1]Part-time and temporary employees as well as employees under age 21 or 25 and over age 60 or 65 could not participate in the private plan.

Agency was a "public agency" as defined by the statute. See
*N. J. S. A.* 43:15A–71. If the Authority was a public agency,
it was required to enroll its employees in PERS. Conversely,
if the Authority was a "subdivision of a municipality," its
employees were not eligible for PERS membership. See
*N. J. S. A.* 43:15A–71. A parallel question is whether the
statutory exemption from mandatory enrollment which
speaks of "another retirement system" should be read to
apply only to employees eligible to enroll in other *public* re-
tirement systems.

At the hearing there was evidence that the Division had
interpreted the term "another retirement system" as meaning
a governmental retirement system provided by a specific re-
tirement system act. The Assistant Director of the Division
of Pensions stated that this interpretation had been con-
sistently employed since PERS' establishment in 1955 and
prior to that time under the predecessor State Employees'
Retirement Act. He also testified that the Division had con-
sistently advised and responded to inquiries that the term
did not encompass a private plan and that New Jersey gov-
ernmental agencies were not authorized to establish private
retirement systems.

In his report the hearing officer found that the Agency was
a "public agency" within the meaning of *N. J. S. A.* 43:15A–
65(b). The Board adopted the hearing officer's finding and
also his conclusion that the statute required the enrollment
of Agency employees.

We conclude that the Board properly determined that
the Paterson Redevelopment Agency is required to enroll all
its regular employees in PERS. In our view, the Agency
must be construed to be a "public agency or organization of
this State" within the meaning of *N. J. S. A.* 43:15A–65(b);
its employees are therefore required to be enrolled in PERS.
The provisions specifically governing participation in PERS
by the Agency and any other "public agency or organization"
appear in *N. J. S. A.* 43:15A–65 to 71.

The definition section of the statute (*N. J. S. A.* 43:15A–71) reads:

The words "public agency or organization" as used in this act shall be construed to mean and include any agency or organization which operates public works or is engaged in service to the public for 1 or more municipalities, local boards of health, or counties, and whose revenue is derived from other than State funds, but shall not be construed to include any subdivision of any county. municipality, school district, privately owned public utility or service or any religious, educational or charitable organization.

The Redevelopment Agency clearly falls within this definition. It is engaged in service to the public for one municipality and its revenue is derived from other than State funds. Specifically, it performed redevelopment services for the City of Paterson and derived the bulk of its funds from the Federal Government.

 Neither are we persuaded that this agency is a "subdivision of [a] municipality" within the meaning of *N. J. S. A.* 43:15A–71 and, hence, excused from PERS participation. The exclusion appears to be designed to insure that the statute's public agency provisions are applied only to independent public agencies and not to dependent boards, agencies and other bodies within and under the control of the governing body of a county, municipality or school district.

The participation in PERS by counties, municipalities and school districts, including all dependent bodies within the government unit, is separately regulated by *N. J. S. A.* 43:15A–75 to 82. Although these provisions are in most respects identical to the public agency provisions, there are two important differences which necessitated the original "subdivision" exception in *N. J. S. A.* 43:15A–71.

The first difference is that voluntary participation in PERS by counties, municipalities, school districts and their dependent bodies is by voter referendum conducted pursuant to *N. J. S. A.* 43:15A–74. By contrast, participation in PERS of independent public agencies is accomplished by resolution of the appropriate body. See *N. J. S. A.* 43:15A–

65(a). Were it not for the "subdivision" language of *N. J. S. A.* 43:15A–71, the more arduous referendum process mandated by *N. J. S. A.* 43:15A–74 could be avoided and, in effect, rendered surplusage.

The second difference is that the provisions of *N. J. S. A.* 43:15A–75(a) require that once the PERS act is voluntarily adopted, eligibility is accorded to all employees of the adopting governmental unit. Due to the multiple departmental nature of counties, municipalities and school districts, the public agency provisions, in the absence of a specific exception, could be construed to permit a municipality to adopt PERS for some of its employees serving specified departments or boards, to the exclusion of all other employees.

A brief examination of the legislative history of the "subdivision" exception provision may be helpful.

In 1924 the State Employees' Retirement System (SERS) was opened for the first time to employees of counties, municipalities and school districts. See *L. 1924, c.* 261. However, it was not until 1946 (a period witnessing a proliferation of independent agencies created to deal with housing and other public needs of the post World War II era) that the system was opened to independent agencies. See *L. 1946, c.* 280.

Except for two clarifying amendments in 1947, the statutory provisions governing independent public agency participation in the state retirement system remained unaltered until 1966. The 1947 amendments altered the definitional section of the public agency provisions to make it clear that the new provisions were not to be applied to *dependent* subdivisions of a county, municipality or school district and that all types of independent public agencies were included, not merely public utilities "which operate public works."[2]

---

[2] The 1947 amendment added local boards of health to the list of independent agencies. In addition, the definition of an independent agency was expanded to include any agency "engaged in service to the public * * *." *L.* 1947, *c.* 176.

The Statement accompanying the bill that resulted in the original act, *L.* 1946, *c.* 280, and the final amendment to the definitional section, *L.* 1947, *c.* 176, are identical and state in full:

> The purpose of this bill is to permit the enrollment in the state employees' retirement system of employees or public agencies operating public works such as water supply and sewage disposal, public housing, parks, etc., after the approval of the governing body of any such organization, some of which serve more than one municipality.
>
> This act is necessary in order to provide equal benefits with city, county or state employees. At present these employees are not covered by the federal social security act or any other state act. This bill is not mandatory upon the public agency.

A redevelopment agency is identical in its governing and financial structure, and in the public nature of its function, to public housing authorities and the other specific types of agencies designated as examples in the bill statement. Accordingly, it is clear on this legislative history and the long-established administrative interpretation of *N. J. S. A.* 43:15A–71 that the Paterson Redevelopment Agency is the type of agency intended by the Legislature to be encompassed by *N. J. S. A.* 43:15A–65 to 71 originating in *L.* 1946, *c.* 280.

In 1966 the Legislature, by *L.* 1966, *c.* 71, extended the PERS act to all local government units without the consent of the individual public employer, effective July 1, 1966. This was made applicable to independent public agencies by *N. J. S. A.* 43:15A–65(b), and to counties, municipalities and school districts by *N. J. S. A.* 43:15A–75(b).

Amendments in 1966 established the present statutory rule that all public employees commencing regular employment for a particular government unit on or after July 1, 1966 or after the effective date of the PERS act in the particular government unit, "whichever is earlier," shall be enrolled in PERS as a mandatory condition of employment. The mandatory membership provision applied

to all regular employees of the Paterson Redevelopment Agency. The Agency was initially created in 1969; accordingly, all its employees commenced employment after the mandatory statutory date of June 30, 1966.

Furthermore, contrary to the Agency's assertion, it is clear that the statutory term "other retirement system" encompasses only governmentally-operated public employees retirement systems authorized by a specific retirement system act. It does not include a contract for an annuity with a private insurance company or other private pension plan arrangement not specifically authorized or established by the Legislature. This is made clear by the long-established administrative interpretation of the phrase "any other retirement system" originally used in the SERS act and similar phrases originating either in the SERS act or early in the PERS act. See *N. J. S. A.* 43:15A–63 (veteran employee membership), *N. J. S. A.* 43:15A–77, former *N. J. S. A.* 43:15–2.2 (school district employee membership), *N. J. S. A.* 43:15A–79(b), *N. J. S. A.* 43:15A–79(c) (membership of state employees paid by county or municipality), *N. J. S. A.* 43:15A–83, former *N. J. S. A.* 43:16–6 (general provision that state retirement act does not affect other pension laws), and *N. J. S. A.* 43:15A–106 (state law enforcement officer membership, with the reference intended to be to the Prison Officers' Pension Fund).

This interpretation by the Division of Pensions has consistently been restricted to the existing statutorily-authorized governmental retirement systems for public employees. This construction by the agency entrusted with the daily administration of the PERS act and other pension legislation is entitled to great weight.

The obvious intent of the legislation has been confirmed by our Supreme Court in *Jacobs v. N. J. State Highway Auth.*, 54 *N. J.* 393 (1969). The court there specifically held that the very broad statutory powers of the independent State Highway Authority to hire, promote and discharge its em-

ployees free of civil service and other tenure statutes did not authorize the Authority to set its own mandatory retirement age for its employees. The court's ruling and reasoning apply with equal force to the similar contention of the Paterson Redevelopment Agency that its general powers authorize it to establish a separate retirement system for its employees. See 54 *N. J.* 401–402. As specifically observed by the court in *Jacobs*:

The statute [*N. J. S. A.* 27:12B–1] neither contains provision for the establishment of an individual pension fund for Authority employees, nor any reference whatever to pension benefits for them * * * [therefore], we must look beyond the particular statute in determining whether an applicable legislative provision for pension benefits exists. Such a provision is found in the comprehensive Public Employees' Retirement System * * *. [at 397–398]

In the instant case the particular provision providing pension benefits for the Agency employees on a mandatory basis is *N. J. S. A.* 43:15A–65(b). The court in *Jacobs* also observed that:

It is clear from a study of the PERS and other related independent statutes that the Legislature has been moving toward a uniform scheme for the pensioning of all public employees in State and local government service. [at 404]

It is equally clear from the early opening of SERS to local government units and the specific legislation encouraging termination of local retirement systems in favor of PERS, that the PERS act embodies this uniform scheme for pensioning all public employees not otherwise covered by the few remaining statutory public employee retirement systems.

Nothing is left to the discretion of the individual public employer except the decision to adopt the retirement system act or not in those instances where coverage is not mandatory. In view of the detailed regulation it is clear the Legislature could not intend retirement benefits for public employees to be subjected to the unilateral discretion of the individual

public employer. The adequacy, financial solvency and coverage of such benefits would constantly be dependent on the financial and political considerations of the administration of that governmental unit.

The Redevelopment Agency had no choice in this matter but to enroll its eligible employees in PERS. The dissolution of the Agency shortly after the hearing below does not render the question moot. The Agency's employees are entitled to retirement credit and other benefits under PERS, and the PERS membership-at-large is entitled to the benefits which should have accrued to the system as a whole from Agency contribution.

Accordingly, the Agency (or its successor which has assumed its predecessor's legal obligations) is hereby ordered to pay into the PERS appropriate contributions and interest as required by statute dating from the Agency's creation in 1969. See *N. J. S. A.* 43:15A–7.1(b); *N. J. S. A.* 43:15A–68.

Affirmed.